

# THE ATTORNEY GENERAL

# OF TEXAS

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

*overrules conf. no. 3000 and letter dated 3-1-37*

September 24, 1968

Honorable Clay Cotten
Commissioner
State Board of Insurance
1110 San Jacinto
Austin, Texas 78701

Opinion No. M-281

Re: Whether fire in-
surance premiums
may be deducted
by a reciprocal
in making out its
gross premium tax
return in accord
with Article 7064,
R. C. S.

Dear Mr. Cotten:

You request the opinion of this office as to whether any fire premiums should be deducted by a reciprocal exchange from its gross premium income in making its tax return.

Your letter states, in part, as follows:

"As a matter of departmental practice, we advise that one reciprocal exchange has, for several years, eliminated the fire insurance premium from Homeowners policies, ocean marine policies, and inland marine policies. This . . . was in addition to the elimination of premiums on the Texas Standard dwelling policy form and fire premiums on automobile insurance policies, the latter two premiums being specified in the contract and therefore ascertainable without question. All of the deductions named in this paragraph have also been taken by one additional reciprocal exchange for the year 1966. Apparently the remaining 22 reciprocal exchanges licensed in this state have not sought to reduce their taxable premium income by calculating the portion of the Homeowners, ocean marine, and inland marine premiums attributable to the fire risk.

"We are confronted with the basic
question of whether any fire premiums should
be deducted by a reciprocal exchange in
making its tax return, and we request your
advice on this question." (Emphasis added
throughout.)

Article 19.12 of the Texas Insurance Code exempts
reciprocal or inter-insurance exchanges from the operation
of all insurance laws of the State except as Chapter 19,
governing reciprocal exchanges, specifically provides, "or
unless reciprocal or inter-insurance exchanges are specific-
ally mentioned in such other laws."

Article 19.11 of the Insurance Code specifically pro-
vides for certain taxes to be applicable to reciprocals:

"Said exchanges shall be subject to the
provisions of Article 7064 and of Article
7064a of the Revised Civil Statutes of Texas
. . . and of . . . Article 5.12 and of . . .
Article 5.49 . . . of this Code."

Article 7064, Vernon's Civil Statutes, imposes a gross
premiums tax on insurance companies other than life, fra-
ternal benefit associations, and non-profit group hospital
service plans. It reads in part that:

"Every insurance corporation, Lloyds'
or reciprocals, and any other organization
or concern transacting the business of fire,
marine, marine inland, accident . . . casualty
. . . or any other kind or character of in-
surance business . . . at the time of filing
its annual statement, shall report to the
Board of Insurance Commissioners the gross
amount of premiums received upon property
. . . and each of such insurance carriers
shall pay an annual tax upon such gross pre-
mium receipts . . .

"
. . . .

" . . . Purely cooperative or mutual fire in-
surance companies carried on by the members
thereof solely for the protection of their own
property, and not for profit, shall be exempt
from the provisions of this law."

The controlling question is whether a reciprocal is such a non-profit "purely cooperative or mutual fire insurance" company as to come within the gross premium tax exemption of Article 7064.

This question was affirmatively answered in Attorney General Opinion No. 3,000 on April 17, 1937:

> "/R_7eciprocals writing fire insurance operate on a purely cooperative or mutual basis solely for the protection of their own property, and not for profit and come squarely within the exemption."

This opinion affirmed the opinion of the Attorney General given on December 21, 1936, denying the exemption to mutual companies and it also reaffirmed an earlier letter opinion dated March 1, 1937, granting application of the exemption to Lumbermen's Underwriters, a reciprocal.

This office has been advised by the State Board of Insurance that no type of insurance carrier other than a reciprocal is claiming this exemption.

Because of various statutory changes since 1937 and other pertinent considerations hereinafter set forth in this opinion, Attorney General Opinion No. 3,000, and the informal letter Opinion dated March 1, 1937, addressed to the Chairman of the Board of Insurance Commissioners, R. L. Daniel, are obsolete and are no longer controlling or persuasive in deciding the question here presented and are therefore expressly overruled where inconsistent herewith.

Over the years the insurance laws have been amended allowing mutual companies and reciprocal exchanges to limit liability of members, stipulate premiums and do numerous other acts which were not within their historic category or sphere of operation. In particular, Article 19.03 of the Insurance Code of Texas provides in part that:

> "When any such subscribers and their attorney in fact shall be authorized to issue policies for cash premiums only, in pursuance of the authority of this Article, it may waive all contingent premiums."

You have also advised this office that there are no reciprocal exchanges operating in Texas today issuing policies providing for contingent premiums.

It is the opinion of this office that regardless of whether a reciprocal exchange could ever have been included within the term "purely cooperative or mutual", we must necessarily hold that one which now issues policies upon which there can be no liability other than the premium paid is no longer operating on a "purely cooperative or mutual" basis as that term is used in Article 7064, and would not be entitled to the exemption therein provided.

The predecessor of Article 7064, as originally passed in 1907, described the carriers covered as:

"Every life, fire, fire and marine . . . and marine inland insurance company, and every life and accident, . . . surety and casualty company, and all other insurance companies doing business in this state . . ."

In 1911 the coverage provision was amended to read:

"Every insurance company transacting the business of fire, marine . . ."

It was not until 1936 that the coverage portion of the statute was amended to read as it does today, i.e.:

"Every insurance corporation, Lloyds', or reciprocals and every other organization or concern transacting the business of fire, marine, . . ."

The exemption language of Article 7064 was contained in the 1907 Act and has been carried forward unchanged.

It is clear that the Legislature in 1907 and 1911 intended to exempt from the coverage of the Act a particular type of insurance company, not merely premiums from fire business done by any organization which had mutual and non-profit characteristics. At that time reciprocals were not insurance companies and therefore were not contemplated by the language of either the coverage provision or the exemption.

The "coverage" provision speaks only of insurance companies, not types of premiums; therefore, the exemption provision, in employing the phrase "cooperative or mutual fire insurance companies" necessarily exempted a particular type of insurance company from the coverage of the Act.

It is reasonable to assume that the Legislature intended to exempt a type of insurance company recognized by Texas law and existing at that time. Since 1879 and until the County Mutual Insurance Company Act of 1937 (Acts of 45th Leg., p. 184) there existed in this State specific creatures of statute known as non-profit mutual fire insurance companies organized solely for the mutual protection of the property of its members. These companies are recognized by the County Mutual Insurance Company Act and their origin and history in Texas statutes is traced in detail in Report and Opinions of Attorney General of Texas, 1922, 1923, page 364, dated December 8, 1923. The 1923 opinion construes an exemption provision very similar to that here under examination as being applicable to mutual fire insurance companies. Reciprocals do not fall in this classification.

It was not until 1913 that reciprocals were mentioned in Texas statutes, and even then they were not recognized as insurance companies. The 1913 Act merely defined and regulated certain indemnity contracts between individuals, firms or corporations and provided for indemnity among them, and provided that indemnity contracts should not be subject to insurance laws. The Courts of Texas have referred to reciprocals as associations; Highway Underwriters v. Reed, 221 S.W.2d 925 (Tex. Civ. App. 1949, no writ); Sergeant v. Goldsmith Dry Goods Co., 110 Tex. 482, 221 S.W. 259 (1920), but we have found no Texas decisions referring to them as insurance companies.

Although some cases and text writers frequently describe the operation of a reciprocal as cooperative, mutual, and providing insurance at cost, the legal status of a reciprocal is one individual and peculiar to itself. It is neither a cooperative nor a mutual as contemplated by statute; and in practice, the element of profit is certainly present, as held by the authorities hereinafter discussed.

A reciprocal or inter-insurance exchange has been described as a "group or association of persons co-operating through an attorney in fact for the purpose of insuring themselves and each other. The attorney in fact

issues the contracts to and for them, and he is the one who is held responsible for a compliance with the laws of the state so far as they relate to their character of insurance." In Re Minesota Ins. Underwriters, 36 F.2d 371 (1929).

"Like Lloyd's Associations, they are unincorporated or voluntary associations, organized for a scheme of mutual insurance." Cooley's Briefs on Insurance, 2d Edition, Vol. I, p. 70.

But the distinguishing feature of a mutual as a type of carrier is that mutual companies assume liability in their corporate capacity which is controlled by and with profits to policyholders, instead of stockholders.

Reciprocals are only "mutual in the sense that each policyholder in the arrangement is insured by all the others, and in turn also insures them to a stipulated extent." Property Insurance, by S. S. Huebner, p. 84 (1938). /See Columbian Protective Ass'n. v. McGoldrick, 54 N.E.2d 351, Ct. of Appeals of N.Y. (1944)_/

"Virtually all exchanges issue policies under which the subscriber participates in profits or savings . . ." Best's Insurance Reports - Fire and Casualty, p. 557 B (1967).

"The subscribers at a reciprocal exchange are not only policyholders thereat and as such entitled to the protection afforded by the policies and required to pay the premiums stipulated in the policies; but they also own the insurance business just as stockholders own their corporation. They are the owners of their insurance exchange, and as such are entitled to reap the profits accruing from the operation of their insurance business and are also required to pay their pro rata part of the losses and expenses incurred at the exchange." Wilson v. Marshall, 218 S.W.2d 345 (Tex. Civ. App. 1949, no writ).

Any question of the Legislature's intention in this regard was foreclosed by the 1937 amendment, expressly placing reciprocals for the first time under the "coverage" provisions; however, the language of the exemption remained unchanged. Under these circumstances, we must conclude that the Legislature had no intention of exempting reciprocals.

Carrying forward this reasoning to Article 7064 as presently written, we find that since Lloyds and reciprocals are expressly named as taxable entities, the phrase "purely cooperative or mutual fire insurance companies" must be construed to provide an exemption to the taxation of "every insurance corporation" or "any other organization or concern transacting the business of fire . . ."

To hold otherwise would be to attribute to the Legislature the intent of taxing reciprocals on their fire business at the beginning of Article 7064 and of exempting them at the end of the same Article. Consequently, such a construction must be rejected. 53 Tex. Jur.2d 272, Statutes, Sec. 182.

"Statutes granting exemptions from taxation must be strictly construed and the burden is upon the person claiming such exemption from taxation to bring himself clearly within the exemption statute. In considering a claim of exemption from taxation, the exemption law must be strictly construed and doubts resolved against such claim." Texas Employers' Insurance Association v. City of Dallas, 5 S.W.2d 614 (Tex. Civ. App. 1928, err. ref.).

It is also pertinent in a construction of the statute that effect be given to all laws and provisions bearing on the same subject as being in para materia, although passed at different times or sessions of the Legislature. 53 Tex. Jur.2d 280, Statutes, Sec. 186.

House Bill Number 95, enacted in 1939 (Acts, 46th Legislature, R.S. 1939, Chapt. 8, p. 417), substantially amended the laws pertaining to reciprocals and attributed to them some of the characteristics of certain mutual insurers as described in the Attorney General's Opinion of December 21, 1936, supra. This 1936 Opinion was the basis for holding that mutuals did not come within the exemption. In 1955, Senate Bill Number 15, (Acts, 54th Legislature, R.S. 1955, Chapt. 117, p. 413) subjected reciprocals to essentially the same requirements as are imposed upon stock insurers. For example, the 1955 amendment of Article 19.11 of the Insurance Code made Articles 5.12 and 5.49 applicable to reciprocals. Article 5.12 assesses "an additional" tax on "the gross motor vehicle insurance premiums, of all insurers" to supersede the tax formerly "collected upon fire

premiums of automobile insurance for the support of the Board of Insurance Commissioners."

Article 5.49 assesses a tax "not exceeding an additional one and one-fourth (1 and ¼%) per cent of the gross fire . . . insurance premiums" for the Fire Insurance Division Fund. An "additional" tax on gross premiums presupposes the basic gross premium tax assessed reciprocals in Article 7064, as that Article prohibits any taxes other than those imposed by Article 7064 and the "maintenance taxes specially levied under the laws of this State . . ."

Further evidencing the legislative intent was the 1955 amendment to Article 5.50 of the Insurance Code, which specifically applies the "additional" tax on gross premiums "to a purely cooperative inter-insurance and reciprocal exchange carried on by the members thereof solely for the protection of their property and not for profit."

The general law and practice of treating reciprocals the same as mutual and stock companies for tax purposes finds legal recognition in federal law also. The Revenue Act of 1962 (Pub. L. 87-834, Sec. 8) eliminated prior provisions which excluded "mutual insurance companies which are inter-insurers or reciprocal underwriters, and substituted provisions authorizing a normal tax . . ." 26 U.S.C.A. § 821, p. 184, historical note to 1962 amendments.

### S U M M A R Y

In accord with Article 7064, Taxation General, V.A.C.S., reciprocal or inter-insurance exchanges must pay a gross receipts tax on all fire insurance premiums and are not a non-profit "purely cooperative or mutual fire insurance" company so as to come within the exemption of Article 7064.

Respectfully submitted,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by CHARLES T. ROSE
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Hawthorne Phillips, Chairman
Kerns Taylor, Co-Chairman
John Grace
Harold Kennedy
Ralph Rash
Alfred Walker

A. J. Carubbi, Jr.
Executive Assistant Attorney General